## SMITH SEPARATOR CORPORATION v. DILLON.

### No. 1585.

Circuit Court of Appeals, Tenth Circuit.

Aug. 15, 1938.

G. C. Spillers, of Tulsa, Okl. (Chas. L. Yancey and Kavanaugh Bush, both of Tulsa, Okl., on the brief), for appellant.

Edward P. Marshall, of Tulsa, Okl. (J. J, D. Cobb, of Tulsa, Okl., on the brief), for appellee.

Before LEWIS, BRATTON, and WILLIAMS, Circuit Judges.

LEWIS, Circuit Judge.

Dillon, appellee, on August 31, 1926, was the owner of several United States patents for a device known as a Tubing Catching Device for Well Tubing and improvements therefor, and he had applications for other patents in that field. On that day he entered into a written contract with appellant wherein he constituted and appointed appellant his licensee to manufacture and sell said device in consideration of a royalty on each device sold to be paid to appellee.

On January 13, 1936, Dillon sued appellant. He prevailed in the District Court, and now after appeal has been perfected appellant here challenges the jurisdiction of that court and this court. The litigants are not citizens and residents of different states and apparently it is admitted that there is no jurisdiction unless conferred by the Seventh subdivision of Section 41, Title 28, U.S.Code, 28 U.S.C.A. § 41(7):

"The district courts shall have original jurisdiction as follows: * * *

"(7) Of all suits at law or in equity arising under the patent * * * laws."

As has been frequently said, a litigant may choose the jurisdiction to which he will apply for relief, but to stay there he must show that jurisdiction both over the subject-matter and the parties exists.

Dillon attached his license agreement to his complaint and by reference made it a part thereof. He made a supplemental agreement with his licensee on February 18, 1928, and on May 1, 1936, he filed an amendment to his complaint. In his complaint he alleged that the original license contract stipulated that: "if the licensee fails to sell in any twelve months' period after one year from the date of said license contract, less than 250 Tubing Catchers, the licensor may at his option terminate said agreement. That from on or about January 1, 1931, until May 13, 1935, defendant failed during any twelve months in said period and during several twelve months' intervals therein, to sell a less number than 250 of said Tubing Catchers, on account whereof, by the terms of said contract aforesaid, plaintiff became, was entitled to and did cancel said contract, license and privilege sought to be exercised by defendant thereunder, by giving notice in writing, by registered mail, of his intention so to do, which said notice was by defendant received on May 15, 1935, a true, full, complete and correct copy of which said letter and notice of cancellation so delivered to and received by defendant is hereto attached, herewith filed and hereby made a part hereof, being marked Exhibit 'G'. That since May 13, 1935, and since May 15, 1935, defendant in wrongful violation of and infringement of the rights of plaintiff, as sole patentee and present owner of said Patents and Patent rights, has manufactured, vended and sold certain Tubing Catchers without license, right or privilege, and in known violation of plaintiff's rights as patentee under the aforesaid and above described patents, and has wilfully infringed said patents and claims thereof and now threatens to continue the sale of said devices, and parts of devices, in respect to which the said defendant is without right of whatsoever nature and character, to the great damage of plaintiff both heretofore incurred and hereafter threatened." There is nothing else alleged in the complaint about infringement of plaintiff's patent rights except a statement of the numbers of four patents that had been issued to Dillon and the dates of issue as to which infringment was charged. The relief prayed in the complaint was that the court determine and adjudge "the termination of the aforesaid license contract and all modifications and amendments thereof"; that the court enjoin the defendant and its agents and representatives from thereafter manufacturing and selling or dealing in the devices embodied in said patents and determine the damages which plaintiff has sustained by reason of their infringement and award it such recoveries as plaintiff is entitled to receive.

The notice of cancellation of the license contract which appellee served on appellant is of date May 13, 1935. It was attached to the complaint and by reference made a part thereof. It refers to the contract dated August 31, 1926, and states:

"Inasmuch as your company has neglected and failed to sell a minimum of 250 Tubing Catchers in any twelve months' period during the years 1931, 1932, 1933, 1934 and 1935, to date, as provided in paragraph 6, page 5 of the contract above referred to, this is to give notice that the undersigned has elected to and does hereby cancel said contract and all amendments thereof and supplements thereto, this cancellation to be effective as of date of receipt of this letter by you.

"Yours very truly,

[Signed] Stephen V. Dillon."

The part of said paragraph 6 to which Dillon referred in his notice is this: "It is further agreed that if party of second part fails to sell in any twelve months' period after one year from the date hereof less than two hundred and fifty (250) Tubing Catchers, the party of the first part may at his option terminate this Agreement." That entire paragraph 6 dealt only with the giving of an option to Dillon to terminate the license agreement in event the licensee (1) should discontinue the manufacture and sale of the devices disclosed in Dillon's patents for a period of six consecutive months, or (2) if it should fail to make payment of royalties provided for, or (3) if a petition in bankruptcy either voluntary or involuntary should be filed by or against the licensee, or (4) if it should fail to perform and fulfill all the terms and conditions imposed upon it by the contract, "the party of the first part may at his option, terminate this Agreement, by notice in writing, delivered to the party of the second part at its office in the City of Tulsa, Oklahoma, in

which event same shall cease and become null and void, * * *."

The supplemental contract between Dillon and the licensee of date February 18, 1928, is also attached to and by reference made a part of the complaint. Paragraph IV of that agreement dealt again with the subjects found in said paragraph 6 of their original contract. It reads:

"IV. Upon a failure of the party of the second part to make returns or to make payment of license fees as herein provided for sixty days after the days named herein, the party of the first part may terminate this license *after* serving a written notice upon the party of the second part; provided party of second part shall have the right for a period of sixty days after the date of any such written notice in which to make said returns and said payments and upon making said returns and payments within such time cancellation notice from first party shall become void and of no effect; but the party of the second part shall not thereby be discharged with any liability to the party of the first part for any license fees due at the time of the service of said notice."

In Dillon's amendment to the bill of complaint filed May 1, 1936, its first and second paragraphs are these:

"1. That it was the purpose of the contract referred to and described in the original bill of complaint herein, and the intent of the parties thereto, and the understanding of the parties at the time of the execution and making thereof that if and in the event the defendant failed to sell as many as 250 Tubing Catchers per year or more, then and in that event, at the option of plaintiff, plaintiff should have the right to cancel the license and privileges conferred by said contract upon said Smith Separator Company, and that if said contract, as executed, does not so provide, that the failure so to provide was the result of inadvertence and mutual mistake upon the part of the parties executing the same, the result of mistake, inadvertence and oversight of the scrivener thereof, and that defendant herein, when it succeeded to the rights and privileges conferred by said contract upon Smith Separator Company, was fully aware of, and knew the intention of the parties to said contract and, if said contract provides the contrary of the intention of the original parties thereto, as aforesaid, knew of the mistake therein in the particulars described above and had notice thereof because of the very language and provisions of said contract, as well as the circumstances surrounding, and has at all times since treated said contract as providing an intention in accordance with the true intention of the original parties thereto, and that the possibility that said contract provides or meant anything other than the true purposes of the original parties thereto as hereinbefore declared, the same was not apparent to nor discovered by the plaintiff until within a short time before the filing of this amendment to his bill of complaint herein.

"2. That at all times and between the dates more particularly alleged in plaintiff's original bill herein, the defendant breached and violated the aforesaid contract, as the same was designed and intended to be prepared, drawn and written and as the parties agreed, in that it did not sell and account for royalties upon as many as 250 of said devices per year during the times and years referred to and described in said original bill of complaint."

Thereupon the plaintiff prayed that the court decree and declare that the contract "be reformed to conform to such intention and that the relief prayed in plaintiff's original bill herein be granted additionally."

Clearly the plaintiff in his pleadings presented issues based solely on the license agreement of which the federal court was wholly without jurisdiction; and yet Dillon presents those issues in support of his claim that the license contract had been canceled on May 15, 1935, by his notice to appellant to that effect in order to sustain his charge that beginning on that day and thereafter appellee was an infringer of his patents in manufacturing and vending the patented devices. Rightly estimated the whole controversy in this suit grew out of the license agreement and in no sense arose under the patent laws. Luckett v. Delpark, 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703, and cases therein reviewed.

Reversed and remanded with directions to vacate the interlocutory and final decrees and dismiss the bill.